**Silvan JOACHIM, et al., Appellants,**

v.

**Samuel B. MAGIDS, Appellee.**

**No. 01–86–0877–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 23, 1987.

Rehearing Denied Oct. 8, 1987.

Van E. McFarland, James D. Pierce, Houston, for appellants.

John D. Ellis, Jr., Houston, for appellee.

Before EVANS, C.J., and SAM BASS and HOYT, JJ.

EVANS, Chief Justice.

This is an appeal from a take-nothing judgment. Appellants sued to recover

damages for alleged violations of federal and state securities statutes in the sale of unregistered stock in their family-owned business.

In 1979, the appellant Silvan Joachim, as president of Buffalo Bag Company, entered into an agreement to purchase his brother Mortimer's stock ownership in their company. The agreed purchase price was $155,-000; $4,950 was to be paid in cash and the balance in installments represented by promissory notes. After Mortimer sold his shares in the company, he withdrew his personal guaranty of the company's bank loan. The company and Silvan then stopped payment on the notes held by Mortimer in payment for his stock. Mortimer sued to recover on the notes against Silvan and Buffalo Bag Company, who responded with a counterclaim seeking rescission and return of the consideration paid for Mortimer's stock.

In that same suit, Silvan and Buffalo Bag Company also brought a third-party claim against the appellee, the attorney who had prepared the stock purchase documents. The record is unclear regarding the proceedings in that suit, but it appears that the trial court struck the third-party action and ordered appellee dismissed as a party to that suit. The appellants' counsel represented to the trial court in this suit that the dismissed third-party action was severed from the main suit. It does not appear that an appeal was taken from the order dismissing the third-party action. Silvan and Buffalo Bag Company thereafter brought this suit as a separate action against the appellee, and tried unsuccessfully to have this suit consolidated with the pending counterclaim against Mortimer.

In this suit, the appellants, Silvan and Buffalo Bag Company, alleged that the appellee prepared the documents in the stock purchase transaction. Appellee allegedly "aided and abetted" in a stock sales "scheme" in which Mortimer falsely represented to Silvan that he would not withdraw his personal guaranty of the company's bank loan, and that he would subordinate his loan to the bank's loan. These representations were allegedly made by Mortimer to induce the appellants to purchase his stock.

The appellants alleged that the stocks from Mortimer were not "registered" as required by the Federal Securities Act of 1933 and the Texas Securities Act, and that "no valid exceptions to such requirement can be shown by the Defendant." The appellants claimed that the appellee was liable to them for the $155,000 consideration paid for the stock, plus interest from date of payment and attorney's fees. In a concluding paragraph, the appellants alleged that a suit "similar to the instant one" had been timely filed on June 1, 1982; that the appellee was dismissed from that suit on a "technical defect"; and that this suit was filed "to ensure that Defendant does not escape liability for its [sic] acts because of the running of the statute of limitations if the other suit is dismissed."

The appellee answered by general denial and specially alleged that because no attorney-client relationship existed between himself and the appellants, he had no duty to advise or counsel the appellants with regard to the matters alleged in their petition.

Silvan Joachim testified that in 1950, he and his father started Buffalo Bag Company in Houston, and that in 1956 or 1957, his brother Mortimer came to work for the company. In about 1972, the two brothers started negotiations on a buy-sell agreement but were unable to finalize that transaction. In 1978, the two renewed their negotiations and eventually reached an agreement whereby Silvan and his business, Buffalo Bag Company, would purchase Mortimer's entire stock ownership in the company. According to Silvan's testimony, he told Mortimer that he would not purchase Mortimer's stock unless he, Silvan, had a line of credit with the bank. Silvan testified that Mortimer assured him that he would continue his guaranty of the bank loan and subordinate his loan to the bank's. Silvan said that he accepted Mortimer's word on the matter and therefore did not ask that his brother's obligation be included in the written stock purchase agreement. Silvan acknowledged that he

was familiar with the provisions of the proposed agreement, but said that he did not read the final document before signing it. At the time he signed the contract, he asked the appellee if there had been any substantial changes made, and the appellee told him there had been none. Silvan testified that he had not consulted with an attorney about the transaction even though his brother Mortimer mentioned to him that he should. In 1980, Silvan tried to renew the company's credit for the next season and was unsuccessful because the bank did not have Mortimer's guaranty and loan subordination.

On cross-examination, Silvan Joachim admitted that the appellee had never represented him, and that he had not sought any advice from the appellee as an attorney, regarding the stock purchase agreement. He acknowledged that the appellee was acting for his brother Mortimer, and that was agreeable with Silvan. Silvan admitted that the appellee prepared the stock purchase agreement acting as a lawyer for Mortimer, and that he, Silvan, had read a prior draft of the agreement.

The appellants offered the appellee's deposition testimony at trial. Appellee stated that he had prepared the stock purchase agreements on behalf of Mortimer, the selling shareholder, and that he had never represented Silvan, the purchaser. He had represented Buffalo Bag Company only in isolated matters. He pointed out that the stock purchase agreement expressly provided that the purchasing company would indemnify the seller against claims resulting from any guaranties that had not been previously released. When the agreement was prepared, it was done so on the premise that Mortimer would no longer be liable on his guaranty. Appellee testified that he had never been told that Mortimer's guaranty was to continue after the sale of Mortimer's stock and that as Mortimer's counsel, appellee would have advised Mortimer against such action. Appellee testified that an "integral part of the agreement" was the understanding that Mortimer would not continue to guaranty the company's obligation at Houston National Bank.

When the appellants rested their case, the appellee called, as an expert witness, Mr. John H. Buck, an attorney engaged primarily in the area of corporate securities work. In response to a hypothetical question, this witness testified without objection, that the sale of stock by one brother to another of his entire ownership in a family-held company would not, under the custom and practice of securities law, constitute a transaction required to be registered with either state or federal security commissions. Mr. Buck explained, over appellants' objection, that such a sale would constitute a "private placement" that was exempt under state and federal security regulations. On cross-examination, the appellants' counsel fully developed Mr. Buck's testimony with respect to the exempt nature of the transaction.

Mr. Buck explained that there were two exemptions applicable to the transaction: (1) the "private offering" exemption, which was designed to exempt transactions among business partners, family corporations, and closely-held entities; and (2) the "isolated transaction" exemption, which is a "one-shot" transaction that does not involve a statutory underwriter, issuer, or dealer. In connection with the appellee's participation in the transaction, Mr. Buck testified without objection:

Q. In your practice, Mr. Buck, knowing the facts of the case as they have been developed over the past hour and a half, would you expect these stocks to have been registered with either Austin or Washington, D.C.?

A. No, sir. There was no requirement for that.

Q. They're exempt, aren't they?

A. That's correct.

Q. As I say, you've testified earlier?

A. Yes, sir.

Q. And with regard to participation with the hypothetical and everything else you know about the case, is that participation that is envisioned for the civil penalty or liability that my client, the lawyer Magids, had? Is that his level of participation that would impose civil liability?

A. My opinion is it does not come near it.

Q. Doesn't even come close, does it?

A. That is correct.

After both sides rested, the court submitted the following issues to the jury:

Special Issue No. 1:

Do you find from a preponderance of the evidence that Sam Magids' participation in the sales transaction was a substantial factor in causing the transaction to take place between the selling shareholders and the buying shareholders?

Answer: We do.

If you have answered Special Issue No. 1, we do, and only in that event, then answer:

Special Issue No. 2:

Do you find from a preponderance of the evidence that Sam Magids owed a duty to Silvan Joachim et al to file or register the securities in question?

Answer: We do not.

Special Issue No. 3:

What do you find to have been the damages, if any, caused to Silvan Joachim, Anet Joachim & Buffalo Bag Company because of failure, if any, to file the securities in question with the appropriate State and Federal Securities Commissions?

Answer in Dollars and Cents, if any.

Answer: $155,000.00.

The appellants then filed a motion for entry of judgment on the jury's verdict and a motion to disregard the jury's answer to Special Issue No. 2. The appellee filed a motion for judgment on the jury's verdict and a motion for judgment non obstante veredicto, which motion the trial court granted.

In 14 points of error, the appellants contend that the trial court erred: (points 1 through 4) in not rendering judgment on the verdict because of their proof of appellee's failure to register the securities under the federal and state securities acts; (points of error 5 through 8) in not rendering judgment for appellants, as a matter of law, because their proof conclusively established the appellee's failure to disclose material facts in connection with the sale of securities; (points of error 9 through 12) in allowing the appellee to amend his pleadings, after return of the verdict, to assert the statute of limitations, and in entering judgment on such amended pleadings; (point of error 13) in entering judgment on the appellee's assertion of the defense of "no-duty" to register these securities; and (point of error 14) in admitting the testimony of the witness Buck, because his testimony related only to legal issues rather than fact questions.

We conclude that the trial court's judgment must be sustained on several grounds. First, there was no evidence that the sales transaction was anything other than a private transfer of stock from one brother to the other in a wholly-owned family enterprise. As such, it was exempt from the registration requirements of both the state and federal security laws. *See* Securities Act of 1933, sec. 4(2), 15 U.S.C. sec. 77d(2) (1982); Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–5(I) (Vernon Supp.1987) (exempting transactions that do not involve any "public offering").

Although we hold that the evidence conclusively establishes the exempt nature of the transaction, we also find that even if any factual issue had been raised on whether the stock had to be registered, the issue of appellee's liability relating thereto was resolved against the appellants by the jury's answer to Special Issue No. 2. There, the jury expressly found that the appellee had no duty to register the stock in question. The jury's finding is fully supported by the testimony of Mr. Buck that the appellee's participation in the transaction did not approach the type or level prohibited by the civil liability provisions of the securities acts.

The "private offering" exemption is an affirmative defense that must be raised and proved by the defendant. *See Swenson v. Engelstad*, 626 F.2d 421, 425 (5th Cir.1980). Under the record in this case, we conclude that the issue was sufficiently raised by the pleadings and the evidence. In their petition, the appellants anticipated the appellee's exemption defense and spe-

cially alleged that "no valid exceptions" to the registration requirement could be shown by the appellee. In response to this pleading, the appellee denied that he had any duty, as the attorney handling the transaction, to advise the appellants with respect to the matters set forth in their petition. The appellants did not except to the appellee's answer, and the record indicates that both sides had fair notice that proof would be presented regarding the applicability of the registration statutes to the transaction in question. We conclude that appellee's affirmative defense was sufficiently put in issue, as was the applicability of the registration statutes, particularly the question of whether the transaction was exempt from registration requirements. *See Insurance Co. of North America v. Cash,* 475 S.W.2d 912, 913 (Tex.1971). The evidence was fully developed on this issue, and we perceive no error in the submission of the issue to the jury. *See* 3 R. McDonald, *Texas Civil Practice in District & County Courts* sec. 12.07 (rev. 1983).

We overrule the appellants' first four points of error and also their 13th and 14th points.

■ We also overrule the appellants' points of error five through eight in which they contend that the undisputed evidence established violations of the federal and state securities acts as a matter of law, because of the appellee's alleged failure to disclose certain material facts to the buyer. Under these points, the appellants argue that Silvan Joachim's undisputed testimony shows that he would not have gone through with the stock purchase agreement had he known that his brother Mortimer would not renew the guaranty of the bank loan, and that this was a material fact that the appellee should have disclosed to Silvan. In support of this argument, the appellants refer to language in the federal and state security acts to the effect that a person selling a security is liable for "an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading...." *See*

Tex.Rev.Civ.Stat. Ann. art. 581–33 (Vernon Supp.1987).

There is neither allegation nor proof that the appellee was aware of the alleged oral agreement by Mortimer to renew his guaranty to the bank. Indeed, his testimony is undisputed that he was not aware of any such understanding and that it would have been contrary to his advice and counsel to his client. Silvan Joachim did not contend that the appellee made any representation to him about Mortimer's renewing his guaranty, or even that the appellee was aware of such alleged representations by Mortimer. Nor does Silvan contend that the agreement should have reflected such understanding or that the appellee made any unauthorized changes in the final draft of the contract. He contends only that the appellee "participated" in the transaction by performing "an act by which the sale is made," and that he was therefore a "link in the chain of the selling process," which made him responsible for his client's actions. *See Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704 (1956).

The appellee's recommendation that Mortimer not renew his guaranty of the bank loan was a matter involving the attorney-client relationship, which the appellee was not required to disclose to the appellants in the sales transaction. As the witness Buck pointed out in his testimony, that was not the type of information that a seller of stock would be required to disclose to a purchaser unless it related to some aspect of the stock purchase agreement. The evidence conclusively shows that the appellee acted solely as an attorney-draftsman in the preparation of the stock purchase documents, and he was not legally bound to relate to the purchaser every discussion that he had with his client regarding the matter. We overrule points of error five through eight and 13.

In their ninth through twelfth points of error, the appellants contend, in effect, that the trial court abused its discretion in permitting the appellee to file a post-verdict trial amendment asserting the statute of limitations and in entering judgment for the appellee based on limitations.

The trial court's judgment shows only that it is based on the appellee's motion for judgment non obstante veredicto and consequent motion for defense judgment on the verdict. The judgment does not specify which particular grounds in these motions formed the basis for the court's ruling. Thus, in view of our conclusion that the judgment may be upheld on the grounds discussed above, we need not consider the appellants' points of error alleging that the judgment was improperly based on appellee's limitation defense.

For these same reasons, we do not consider the appellants' 15th and 16th points of error in which they contend that the court erred in refusing to allow the amendment of their petition to add the word "damages" and in refusing to interpret their petition as setting forth an action for damages. Points of error nine through 12, 15, and 16 are overruled.

 In the appellants' seventeenth through twentieth points of error, they contend that the trial court erred in excluding various documents tending to show the appellee's knowledge of Mortimer's intent to withdraw the loan guaranties, the appellee's participation in preparing the sales documents, and the importance of Mortimer's guaranty to the bank. These "facts" were essentially undisputed, and if there was any error in the exclusion of those documents, no harm is shown. We thus hold that the exclusion of the proffered documents, if error, was not such error as requires a reversal of the trial court's judgment. Points 17 through 20 are overruled.

We also overrule the appellants' points of error 21, 22, and 23, under which the appellants argue that the court erred in refusing to submit their requested special issues relating to the appellee's participation in the sales transaction and to his alleged failure to disclose material facts in the sales documents. The appellants' special issues four and five were properly excluded by the trial court because there was no proof that the appellee was aware of any oral agreement between the Joachim brothers that would vary the written agreement. Appellants requested no issue on damages caused by a failure to disclose material facts, and no such issue was submitted to the jury. The appellants' special issue number two was properly excluded by the trial court because it was substantially similar to the special issue number one that was submitted to the jury.

In their 24th point of error, the appellants contend that the trial court erred in refusing to consolidate their lawsuit with the earlier lawsuit brought against Mortimer Joachim. Those proceedings are not before us, and under this state of the record, we conclude that no abuse of discretion can be demonstrated. Because we find no reversible error, this point of error is overruled.

The judgment of the trial court is affirmed.